UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH J. GONNOCCI REVOCABLE
LIVING TRUST,

            Plaintiff,

v.                                                      Case No. 02-74796
                                                        Honorable Patrick J. Duggan

THREE M TOOL & MACHINE, INC.,
ULTRA GRIP INTERNATIONAL, INC.,
THREE M HOLDING CORP.,
ULTRA GRIP NORTH, INC., and
MICHAEL A. MEDWID,

            Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 13 2006.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
           U.S. DISTRICT COURT JUDGE

On December 4, 2002, the Ralph Gonnocci Revocable Living Trust ("Trust") filed

this lawsuit alleging that Defendants are infringing U.S. patent No. 5,184,833 (the '833

Patent). The parties subsequently filed numerous motions for summary judgment,

including a motion for summary judgment filed by Defendants based on the doctrine of

patent shop rights. On March 28, 2006, this Court issued an opinion concluding that

Defendants hold a shop right in the '833 Patent and that they therefore are entitled to

1

summary judgment with respect to the only claim in the Trust's one-count complaint.  On
April 17, 2006, the Trust filed a motion for reconsideration pursuant to Rule 7.1(g) of the
Local Rules for the Eastern District of Michigan.  On April 19, the Court issued a notice
permitting Defendants to file a response to the motion.  Defendants filed a response on
April 28, 2006.

Rule 7.1(g) provides that a motion for reconsideration only should be granted if the
movant demonstrates that the Court and the parties have been misled by a palpable defect
and that a different disposition of the case must result from a correction of such a palpable
defect.  E.D. Mich. L.R. 7.1(g).  The Trust argues that the Court committed two palpable
defects in its March 28 opinion and that the correction of those defects results in a
different disposition of the Trust's patent infringement claim.  First, the Trust contends
the Court erred in finding that any defendant aside from Three M Tool & Machine, Inc.
("3M") held shop rights in the '833 Patent.  Second, the Trust claims the Court overstated
the scope of the shop right.  Specifically, the Trust argues that a shop right only permits
the holder of the right to use the infringing product in its workplace; the right, the Trust
argues, is not so broad as to grant the holder a right to manufacture, market, or sell the
product.

With respect to the first issue raised in the Trust's motion, this Court held and
continues to hold that because Ultra Grip, Inc. employed Ralph Gonnocci ("Gonnocci")
and Kenneth Cross ("Cross") to design a power chuck for manufacture and sale and

because Ultra Grip, Inc. merged into 3M, that 3M is entitled to shop rights.[1]  Ultra Grip International, Inc. ("Ultra Grip International") likewise holds shop rights in the '833 Patent because it was organized to carry on the same business as Ultra Grip, Inc.– that being the manufacture and sale of the power chuck Gonnocci and Cross designed and developed while they were employees of Ultra Grip.  *See Lane & Bodley v. Locke*, 150 U.S. 193, 14 S. Ct. 78 (1893).  Additionally, Ultra Grip International employed Gonnocci during which time it continued to manufacture and sell the power chuck embodied in the '833 Patent.  Gonnocci testified that during his employment he never objected to Defendants' manufacture and/or sale of products covered by the '833 Patent and he in fact admits that he acquiesced in Defendants' activities.  *See* 3/28/06 Op. (citing Docket #114 Ex. 6 at 56-62; Docket #103 at 3).

With respect to the remaining defendants, as the Court indicated at page 19 of its March 28 opinion, Defendants presented evidence– Michael Medwid's affidavit– establishing that neither Three M Holding Corporation ("3M Holding"), Ultra Grip North, Inc. ("Ultra Grip North") or Michael Medwid ("Medwid") individually use or sell any product involving the power chuck design shown in the '833 Patent.  *See* 3/28/06 Op. at 19 n.5 (citing Docket #100 ¶ 2).  The Court further indicated that the Trust failed to present any evidence to counter Medwid's assertion.  Therefore there is no evidence that either 3M Holding, Ultra Grip North, or Medwid directly infringe the '833 Patent.  Thus

---

[1]The Trust in fact concedes in its motion for reconsideration that, if Defendants are entitled to a shop rights defense, 3M is the entity entitled to assert it.  *See* Mot. at 7.

3

the Trust's claim against these defendants for direct infringement of the '833 Patent properly was dismissed.

The Trust now asserts in its motion for reconsideration that the Court erred in finding no evidence of these three defendants' direct infringement and that it in fact demonstrated in its reply brief with respect to its motion for summary judgment that these defendants engaged in the manufacture and/or sale of products infringing the '833 Patent. *See* Mot. at 8 (citing Docket #119).  The Trust, however, did not assert or present evidence in its reply brief to establish that Medwid,  Ultra Grip North, or 3M Holding– as distinct entities– manufactured and/or sold the power chuck embodied in the '833 Patent. Instead, the Trust argued that 3M Holding and Medwid should be liable for 3M's and Ultra Grip International's infringement under a piercing the corporate veil theory.  *See* Docket #119 at 3-5.  This argument was based on the Trust's assertion that Medwid is the sole owner of all of the corporate defendants, he ultimately is the decision-maker for the companies, and Medwid and 3M Holding failed to maintain any separate corporate identity in the corporations.  *See id*.

As the Trust explained in its reply brief, one of the requirements for holding a corporate owner or controller liable for harms done by the corporation is that "'the corporate entity must be used to commit a fraud or wrong.'"  *See* Docket #119 at 4 (quoting *Foodland Distrib. v. Al-Naimi*, 220 Mich. App. 453, 456-57, 559 N.W.2d 379 (1996)).  As the Michigan Court of Appeals further reiterated in *Foodland Distributors*, "'the corporate entity must be a mere instrumentality of another entity or individual.'"

4

220 Mich. App. at 457 (quoting *SCD Chem. Distrib., Inc. v. Medley*, 203 Mich. App. 374, 381, 512 N.W.2d 86 (1994)).  First, the Trust points to no evidence in the record that would warrant the Court to find that Ultra Grip International is a "mere instrumentality" of 3M Holding and Medwid.  While Defendants acknowledge that Medwid is the sole owner of 3M Holding and that 3M Holding is the owner of Ultra Grip International, the evidence relating to the formation of Ultra Grip International does not lead this Court to conclude that it was formed as a "mere instrumentality" to commit a wrong.  Second, because the Court found that 3M and Ultra Grip International are not liable for infringement due to their shop rights (i.e. did not commit a wrong), there is no reason to hold Medwid, Ultra Grip Holding, or Ultra Grip North liable pursuant to the Trust's piercing the corporate veil theory.  Similarly, while the Trust also alleged that Defendants actively induced and contributed to the infringement of the '833 Patent, if 3M and Ultra Grip International  hold a shop right and therefore are not infringing the '833 Patent, 3M Holding, Ultra Grip North, and Medwid cannot be liable for contributing or inducing infringement.

When it responded to Defendants' motions for summary judgment, the Trust neglected to advance the second argument raised in its motion for reconsideration with respect to the scope of any shop right held by any defendant.  As the Trust correctly states, "[a] shop right permits the employer to use the employee's invention without liability for infringement."  *See* Mot. at 10 (quoting *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996)).  The Trust argues that under the common law

an employer's "use" may not exceed its use of the patented product within the employer's workplace.  In fact, the common law supports this Court's finding that Defendants' shop right encompasses a license to manufacture and sell the patented invention.

As the Sixth Circuit explained more than a hundred years ago, the rights encompassed under the shop right doctrine are not universal.  *Withington-Cooley Mfg. Co. v. Kinney*, 68 F. 500, 506 (1895).   In other words, the rights encompassed depend upon the facts and circumstances of each case: "The duration and scope of a license must depend upon the nature of the invention and the circumstances out of which an implied license is presumed, and both must at last depend upon the intention of the parties."  *Id*. (citation omitted).  In *Withington-Cooley*, the court found that the plaintiff-inventor was employed to create patterns and drawings of power presses for the defendant to manufacture and sell.  *Id*. at 507.  The court therefore held that the defendant-employer's shop right "was intended as an authority to make and sell power presses embodying [the plaintiff's invention] so long as [the defendant] should continue in business, and during the life of the patent."  *Id*.  The court reasoned:

> . . . when he accepted employment and produced an improvement it must be presumed that he intended that his employer would use that improvement in such new machines as he should make while engaged in the business of supplying such machines to the trade.  We cannot reasonably liken this case to the building of a machine for use.  In such a case the license might well be limited to the use of the machine . . . But here [the plaintiff] was to make drawings at the expense of [the defendant], and then patterns by which a working press might be made for sale and not for shop use.

6

*Id*.  Citing *Withington-Cooley* forty-one years later, the Third Circuit held that a
manufacturer of staybolts held a shop right in a bolt invented by its former president
during his employment and that the license granted the manufacturer the right to
manufacture and sell the bolt in accordance with the invention.  *Flannery Bolt Co. v.
Flannery*, 86 F.2d 43 (1936); *see also Consol. Vultee Aircraft Corp. v. Maurice A.
Garbell, Inc.*, 204 F.2d 946, 949 (9th Cir.), *cert. denied* 346 U.S. 873, 74 S. Ct. 122
(1953)(concluding that by virtue of its shop right, the plaintiff was entitled to manufacture
and sell airplanes embodying the defendant's alleged invention); *Cambridge Wire Cloth
Co. v. Applegarth*, 1964 WL 8101, 142 U.S.P.Q. 514 (Md. Cir. Ct. Aug. 26, 1964);
*Gemco Eng'g & Mfg. Co. v. Henderson*, 84 N.E.2d 596, 598 (Ohio 1949).

       In the present case, the nature of Defendants' businesses, the character of the
invention involved, the circumstances surrounding the creation of the invention, and the
intention of the parties (all of which are discussed at length in the Court's March 28
opinion), lead this Court to conclude that Defendants' shop rights include a right to
manufacture and sell the power chuck embodied in the '833 Patent.  Medwid hired
Gonnocci to develop a power chuck that Medwid, Gonnocci, and Kenneth Cross intended
to manufacture and sell through a new company.  *See* 3/28/06 Op. at 4, 18 & 20.
Gonnocci and Cross thereafter invented the power chuck embodied in the '833 Patent,
first while employed by 3M and then while employed by the new company, Ultra Grip,
Inc.  *See id*. at 19.  The evidence clearly shows that Gonnocci and Cross intended the new
company to manufacture and sell their invention.  In fact they assigned the '833 Patent to

7

the company when they filed their patent application.  *See id*. at 5.  Thereafter the new

company was merged into 3M and Ultra Grip International was formed as a subsidiary.

Gonnocci continued to work for 3M and Ultra Grip International for several years during

which time the companies manufactured and sold the power chuck product.  *See id*. at 5-

6.

For the above reasons, the Court concludes that it did not err in granting

Defendants' motion for summary judgment and accordingly dismissing the Trust's

complaint against Defendants.  Therefore,

**IT IS ORDERED**, that the Trust's motion for reconsideration is **DENIED**.


PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Rodger D. Young, Esq.
Daniel H. Bliss, Esq.
Jeffrey P. Thennisch, Esq.
Leonard K. Berman, Esq.